In the Matter of Thomas V. Giorgio, Petitioner, v Rich-
ard A. Bucci, as Mayor and Commissioner of Public Works of
the City of Binghamton, et al., Respondents. [700 NYS2d 561]
—Crew III, J. Proceeding pursuant to CPLR article 78
(transferred to this Court by order of the Supreme Court,
entered in Broome County) to review a determination of
respondents which terminated petitioner's benefits under Gen-
eral Municipal Law § 207-a.

On January 13, 1996 petitioner, a firefighter for respondent
City of Binghamton in Broome County, allegedly sustained
injuries to his back while in the performance of his duties.
Petitioner's application for General Municipal Law § 207-a
benefits was granted and he received such benefits until May
1996, when he was notified that his benefits were being
terminated based upon newly discovered evidence that his
injury predated the January 13, 1996 incident.

Petitioner commenced a CPLR article 78 proceeding, which
he subsequently discontinued upon the restoration of his
benefits pending a pretermination hearing. Petitioner's benefits
were thereafter terminated following the hearing and petitioner
commenced a second CPLR article 78 proceeding. Supreme
Court annulled respondents' determination on the ground that
petitioner was denied a full and complete evidentiary hearing
prior to termination of his benefits and we affirmed (246 AD2d
711, lv denied 91 NY2d 814). Following a second administra-
tive hearing, it was determined that petitioner's injury was the
result of causes unrelated to his duties as a firefighter and his
benefits again were terminated.

Petitioner then commenced the instant CPLR article 78
proceeding claiming, inter alia, that a municipality may not re-
strict a court's jurisdiction to review a claim for General Mu-
nicipal Law § 207-a benefits to a substantial evidence standard
absent specific legislative authority and that, in any event, the
underlying determination was not supported by substantial ev-
idence. Supreme Court rejected petitioner's standard of review
argument and transferred the matter to this Court for
consideration of whether respondents' determination was sup-
ported by substantial evidence.

Initially, we reject petitioner's contention that a municipality
cannot restrict Supreme Court's standard of review to one of
substantial evidence absent a specific legislative mandate in
that regard. While the General Municipal Law does not provide
an administrative framework for making disability determina-
tions, courts have long recognized the appropriateness of
administrative hearings for that purpose (see, Matter of Dem-

*bowski v Hanna*, 245 AD2d 1039, *lv denied* 91 NY2d 813; *Matter of Furch v Bucci*, 245 AD2d 749, *lv dismissed* 91 NY2d 953; *Matter of Faliveno v City of Gloversville*, 215 AD2d 71, *appeal dismissed* 87 NY2d 896, *lv dismissed* 87 NY2d 1055; *Matter of Elliott v City of Binghamton*, 94 AD2d 887, *affd* 61 NY2d 920), and the Legislature has specifically provided for a substantial evidence review of determinations made by reason of such hearings (*see*, CPLR 7803 [4]).

With regard to petitioner's remaining contention, we need note only that the record reveals conflicting evidence regarding the causal relationship of petitioner's injury to his duties as a firefighter and that "it was within the Hearing Officer's exclusive authority to evaluate [such] conflicting medical evidence" (*Matter of Furch v Bucci*, 254 AD2d 642, 643, *lv dismissed and denied* 93 NY2d 833).

Mercure, Yesawich Jr. and Mugglin, JJ., concur.

Mikoll, J. P. (dissenting). While I agree with the majority that the appropriate standard of review is whether respondents' determination is supported by substantial evidence, I cannot agree that the evidence satisfies this standard.

"When a disability is attributable to both a line-of-duty injury and a preexisting non-work-related condition, [General Municipal Law § ] 207-a benefits must be provided if the job caused or contributed to the disability 'in a substantial degree' " (*Matter of Dembowski v Hanna*, 245 AD2d 1039, *lv denied* 91 NY2d 813, quoting *Matter of McNamara v City of Syracuse*, 60 AD2d 753). Without elaboration, the majority defers to the Hearing Officer's authority to resolve the record's "conflicting evidence" as to the causal relationship between petitioner's injuries and the on-duty incident in question. I believe that the record contains virtually no support for the Hearing Officer's conclusion and abundant support for petitioner's claim.

Petitioner claims to have sustained disabling injuries resulting from an on-duty incident on the evening of January 13, 1996, wherein he slipped on icy pavement while returning from a call. He testified that his feet went out from underneath him and his body twisted as it went down. His fall was partially broken by a trauma bag he was carrying. Although he initially believed himself uninjured, symptoms appeared as the night progressed and he was taken by ambulance to the emergency room. On January 15, 1996, petitioner was seen by his physician, Vincent Maddi, and was subsequently treated by Daniel Galyon, a neurosurgeon, and Laurence Schenk, an orthopedic surgeon.

It is undisputed that prior to the January 1996 incident,

petitioner had received intermittent medical treatment for back problems relating to preexisting spinal stenosis and degenerative disc disease, as well as for several motor vehicle accidents between 1967 and 1988. The most recent such medical treatment was in 1993. It is likewise undisputed that from 1982 to 1996, petitioner lost no time from work due to these problems and was able to fully perform all the duties of an active firefighter without difficulty. Six firefighters, including the Chief of the Fire Department, corroborated petitioner's testimony to this effect.

Two physicians testified at the hearing: Maddi and respondents' consultant, Howard Platt. Maddi testified that the January 13, 1996 incident exacerbated petitioner's preexisting condition to such a degree that it produced symptoms and disability that did not previously exist. Although neither Galyon nor Schenk testified, petitioner offered their reports into evidence. In his June 20, 1997 report, Galyon expressed the belief that petitioner's "work-related injury of January 13, 1996 clearly exacerbated this preexisting condition, with resulting radicul[o]pathy and subsequent disability".

Similarly, Schenk opined in a June 20, 1997 report that the January 1996 incident was "the episode that caused the progressive degenerative condition to become symptomatic which up until that point, to my knowledge, had been asymptomatic". Respondents' doctor testified that he found no evidence of any traumatic injury to petitioner and that his stenosis could not have been caused by the January 1996 incident. Notably, petitioner never contended that his concededly preexisting stenosis was caused by the January 1996 incident. In response to a hypothetical question, Platt acknowledged that, assuming a history of the nature alleged by petitioner, an incident of the type experienced by petitioner on January 13, 1996 could have contributed to the onset of symptoms and resulting disability.

The Hearing Officer refused to credit Maddi's testimony based upon findings and conclusions of the Board of Professional Medical Conduct in revoking Maddi's license to practice medicine in June 1997. In my view, it was eminently unjust and rationally indefensible to categorically reject Maddi's evidence on this basis alone. Petitioner had been a patient of Maddi since 1966, prior to which time he was the patient of Maddi's father. Petitioner should not be penalized for whatever conduct on the part of his physician resulted in the revocation of his license. This is particularly so given the extent to which much of what Maddi testified to by way of objective findings was corroborated by the reports of other physicians and the

testimony of respondents' expert. Moreover, in stating that "the only medical testimony" offered by petitioner came from Maddi, the Hearing Officer ignored the reports of Schenk and Galyon, and as to the latter lamented the fact that he was not called upon to give his opinion regarding causality (which is contained in the June 20, 1997 report).

Finally, I would note that with scant medical evidence to support his conclusion, the Hearing Officer's conclusions give focus unduly on what are ultimately immaterial aspects of petitioner's case. Extensive discussion is given to petitioner's claimed irascible attitude toward the emergency room nurse, at which the Hearing Officer took significant umbrage based on his own experience in hospitals and the health care industry. Citing petitioner's refusal to give an adequate account of "the specific details of his alleged injury", the Hearing Officer concludes that "[t]his is clearly not the reasonable behavior of someone who is in some pain * * * [or] is requesting medical treatment for an injury that could potentially jeopardize his ability to perform his job for the rest of his career". Similarly, the Hearing Officer faults petitioner for his claimed "inconsistencies" in recounting the incident itself, i.e., whether he "slipped and fell" or just "slipped".

Contrary to the majority's view that the record presents conflicting evidence which the Hearing Officer was free to resolve against petitioner, I find the record to contain very little, and certainly no "substantial evidence", to support respondents' determination, which I would annul.

Adjudged that the determination is confirmed, without costs, and petition dismissed.